IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA SIMS, | ) |
|       Plaintiff, | ) |
| v. | ) 2:06cv1013 |
| | ) **Electronic Filing** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION**

March 26, 2008

## I. INTRODUCTION

Plaintiff, Lisa Sims ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), as amended. 42 U.S.C. §§ 1381-1383(f). The parties have filed cross-motions for summary judgment, and the record has been developed at the administrative proceedings.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on July 7, 2004, alleging disability since August 1, 2003 due to speech impediment, asthma, attention deficit disorder ("ADD"), a bipolar mood disorder, a learning disorder ("LDD"), borderline intellectual functioning, depression and a bone anomaly affecting her upper right quadrant. R. 13, 37, 75, 146-47. Plaintiff's claim was initially denied, and she filed a timely request for an administrative hearing. R. 11, 29-33, 37. A hearing was held on February 27, 2006, in Latrobe, Pennsylvania, before Administrative Judge John J. Mulrooney, II ("ALJ"). R. 131-168. Plaintiff was represented by counsel, E. David Harr, and Plaintiff's mother, Dorothy Hullenbaugh. Vocational Expert ("VE"), Mark Heckman, also appeared and testified. *Id*. The ALJ issued an unfavorable decision on March 17, 2006, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 11-20.

The ALJ's decision became the Commissioner's final decision when, on May 26, 2006, the Appeals Council denied Plaintiff's request for review. R. 3-5. The instant action now seeks review of the Commissioner's final decision, and the matter is before this court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**III.    STATEMENT OF THE CASE**

Plaintiff was born on January 19, 1986. R. 27, 58. She is currently twenty-two (22) years old, making her eighteen (18) years old at the time of application for SSI benefits and twenty (20) years old at the time of the administrative hearing. R. 11. Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963. At the age of sixteen (16), while in the tenth grade, Plaintiff "signed herself out of school," which effectively means she dropped out of school, due to the frustration caused by her inability to do the work and the fact that she was failing. R. 144, 147-49, 160-61. Plaintiff most recently worked part time as a security guard for about three months in the latter half of 2004 and has also worked hanging clothes for The Salvation Army and was a volunteer firefighter with her local hook and ladder company. R. 76, 81, 88, 134-37. The ALJ and the VE found no significant prior substantial gainful activity ("SGA"), and found that the skill level of the jobs suitable for Plaintiff were at all exertional levels and unskilled. R. 14, 162-67.

Prior to Plaintiff's July 7, 2004 application for SSI benefits, the record reveals no hospitalizations or medications for her disabilities, with the exception of the use of an inhaler for her asthma. R. 44, 46. Plaintiff was evaluated by Peter Saxman, Ph.D., on August 20, 2004, at which time she was administered an Individual Intellectual Evaluation for Disability ("WAIS-III"). R. 106-08. The results of the WAIS-III realized a Verbal IQ score of 73, Performance IQ score of 75, and Full Scale IQ of 72.[1] R. 107. Dr. Saxman stated in his report that these test

---

[1] The report lists Performance IQ twice, first with a score of 75 and then with a score of 72. The Court recognizes the manner in which these results are typically reported, with the Full

2

results were a valid estimate of Plaintiff's current intellectual functioning, noting that Plaintiff seemed to make a good effort and was well-motivated. *Id*. The results placed Plaintiff in the borderline range of mental retardation. *Id*. Dr. Saxman's report also revealed that Plaintiff had completed a Wechsler Intelligence Scale for Children-III ("WISC-III") evaluation in 1995 in which she received scores of Verbal IQ 73, Performance IQ 86 and Full Scale IQ 84, and again in approximately 2001 in which she received scores of Verbal IQ 73, Performance IQ 74 and Full Scale IQ 71. R. 106. Dr. Saxman's opinion, as stated in his report, indicates that Plaintiff has marked impairment in dealing with instructions, judgments and decisions and has some sort of learning disorder. R. 107. Dr. Saxman further stated that Plaintiff is only slightly above the mild mental retardation level and seems unable to retain information. *Id*. Plaintiff also has marked impairment in dealing with the public, supervisors, coworkers, work pressures and changes in a routine, according to Dr. Saxman's report. *Id*.

On September 21, 2004, Manella C. Link, Ph.D., completed a Psychiatric Review Technique Form ("PRTF"), indicating a finding of borderline intellectual functioning as well as coexisting nonmental impairment(s). R. 109-115. Based on the diagnosis of borderline intellectual functioning, Dr. Link determined that Plaintiff experienced mild to moderate limitation in the functions of daily living, social functioning and maintaining concentration, persistence or pace, with no episodes of decompensation. R. 111. Dr. Link also completed a Mental Residual Functional Capacity Assessment ("RFC") for Plaintiff. R.113-15. Dr. Link rated Plaintiff as either not significantly limited or moderately limited in the four categories and twenty subcategories designed to facilitate assessing residual functional capacity on the form, unless there was no evidence of limitation in a given category. R. 113-14. Dr. Link concluded, based upon her review of the record, that Plaintiff can perform simple, routine, repetitive work in a stable environment and that she would be able to understand, retain and follow simple job instructions. R. 115. Dr. Link further offered that Plaintiff would be able to get along with others

---

Scale IQ being last, and therefore determines that the second entry of Performance IQ was listed in error, and that this was actually meant to reflect the Full Scale IQ score. Indeed, the parties stipulate to as much in their briefs. Pl.'s Brief at 9, Def.'s Brief at 3.

in the workplace without being a distraction, and that Plaintiff can sustain an ordinary routine without special supervision. *Id*. Dr. Link also noted that Plaintiff's limitations in all areas evaluated are significant, but not to the extent that they preclude her from engaging in routine work tasks. *Id*. Dr. Link found Plaintiff's statements to be partially credible based upon the evidence of record. *Id*. Dr. Link stated that Dr. Saxman's report was considered and is consistent with her conclusions, and Dr. Saxman's report was therefore adopted in Dr. Link's assessment, which ultimately concluded that Plaintiff's limitations resulting from her impairment do not prevent her from engaging in regular work on a continuing basis. *Id*.

From September 7, 2005, until January 10, 2006, Plaintiff treated with Dr. Joel Last, M.D., of the Latrobe Area Hospital Mental Health Center. R. 120-26. Dr. Last's reports indicate that Plaintiff returned to the Center after previously being treated there in 1995 and 2001 for ADHD and depression. R. 125. Dr. Last's reports denote that Plaintiff presented with severe depression and nonmanic mood swings, and subsequent treatments revealed memory lapses, blackout episodes, and passive suicidal ideation, but no homicidal ideation. R. 120-26. Dr. Last diagnosed Plaintiff with Bipolar Mood Disorder, Type II, noting a history of ADHD, thought to be in remission, and assigned a current Global Assessment of Functioning ("GAF") of 35, and of 45 within the past year. R. 126. The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000). Plaintiff's score indicated that she had "some impairment in reality testing or communication," or "major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* Dr. Last prescribed medication for Plaintiff, but continued to note severe depression and mood swings on each subsequent Psychiatric Evaluation Review. R. 121-24. Although the last report from Dr. Last in the record is from January 2006, Plaintiff's testimony at the February 2006 administrative hearing indicates that she continued treatment at Latrobe Area Hospital Mental Health Center with Dr. Lathis, spelled phonetically in the transcript, so it is possible that this may still be Dr. Last, especially in consideration of the fact that Plaintiff is alleged to have a speech impediment. R. 149.

## IV. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority

under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).
>
> *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V. DISCUSSION

Plaintiff argues that the ALJ's determination merits remand by this Court for two reasons. First, Plaintiff asserts that the ALJ erred in failing to find that Plaintiff's mental impairments are not disabling, arguing that such a finding is inconsistent with the record and that, more specifically, Plaintiff's GAF scores and the conclusions contained in the consultative psychological examiner's report indicating marked impairment in certain categories necessitate reaching the antithetical result. Second, Plaintiff contends that, as a result of the error particularized in the preceding sentence, the ALJ failed to properly propound a hypothetical question to the VE accurately incorporating all of Plaintiff's individual impairments and limitations.

The ALJ used the five-step process described above and outlined by the Social Security Act to evaluate Plaintiff's SSI claim. 20 C.F.R. § 404.1520(a). After determining that Plaintiff

has not engaged in substantial gainful activity since her protective filing, the ALJ acknowledged the medical claims presented by the Plaintiff such as asthma, a bipolar mood disorder, borderline intellectual functioning, a history of attention deficit hyperactivity disorder and a bone anomaly affecting Plaintiff's upper extremities.[2] R. 13. The ALJ indicated that the Plaintiff's impairments, other than the bone anomaly which the ALJ determined was not significantly developed by the record, were severe. R. 13-14.

The ALJ then determined that Plaintiff's residual functional capacity was such that, given certain restrictions to accommodate Plaintiff's limitations due to her impairments, she would be able to perform regular work at all exertional levels existing in the national economy. R. 14. In reaching this conclusion, the ALJ evaluated Plaintiff's impairments under Listings 12.02 Organic Mental Disorders, 12.04 Affective Disorders and 12.05 Mental Retardation in Appendix 1, Subpart P, Regulation No. 4. R. 14. The ALJ likewise considered Plaintiff's reported activities of daily living, including social functioning. R. 15. The ALJ further contemplated Plaintiff's subjective complaints, and her credibility while testifying at the administrative hearing. R. 16-17. Finally, the ALJ reconciled his conclusion of Plaintiff's residual functional capacity with all the medical evidence contained in the record, including Plaintiff's GAF scores and the conclusions reached by Dr. Saxman. R. 14-19. Noting that Plaintiff is a "younger individual" as defined in the Regulations with no work skills, the ALJ concluded that jobs exist in the local and national economies suitable for Plaintiff, taking the limitations caused by her impairments into consideration, and thus the ALJ found Plaintiff to be not disabled as defined by the Act. R. 19-20.

Plaintiff argues that the ALJ's decision does not adequately cogitate the evaluation of

---

[2]Although Plaintiff initially claimed disability based upon speech impediment, asthma, attention deficit disorder ("ADD"), a bipolar mood disorder, a learning disorder ("LDD"), borderline intellectual functioning, depression and a bone anomaly affecting her upper right quadrant, the LDD claim appears to have been integrated into the borderline intellectual functioning claim and the depression claim appears to have been integrated into the bipolar mood disorder claim. The speech impediment claim was not developed in the record, and appears to have been abandoned by Plaintiff.

Plaintiff by Dr. Last, Plaintiff's treating psychiatrist, or the evaluation of Plaintiff by Dr. Saxman, the Commissioner's appointed psychologist. Specifically, Plaintiff alleges error in that the ALJ did not properly consider Plaintiff's mental health history, Plaintiff's current complaints, Plaintiff's GAF scores and Plaintiff's continuing symptoms as reported by Dr. Last, Plaintiff's WAIS-III scores as reported by Dr. Saxman, and Dr. Saxman's report that Plaintiff had marked limitations in several categories relating to her ability to engage in regular work activity. Plaintiff argues the ALJ should have given Dr. Last's medical opinion controlling weight. The ALJ, however, is not required to unequivocally accept a physician's opinion. A medical source opinion regarding a claimant's ability to work is not entitled to any special deference. The ALJ may use his discretion, in consultation with medical opinion, to determine residual functional capacity. 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p. Instead, Plaintiff argues, the ALJ substituted his own "lay medical opinion" for those of Drs. Last and Saxman.

The Court is not inclined to reach the conclusions urged by Plaintiff. As an initial matter, the Court notes that the ALJ's decision discusses the evaluations of Drs. Last and Saxman at length, and finds certain aspects to lack support in the record. Furthermore, rather than substituting his own "lay medical opinion" for that of the doctors, the ALJ relies, where appropriate, on the report of Dr. Link to support his conclusions. *See*, i.e., *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (It is well established that an ALJ may rely on the opinions of non-examining physicians if the opinions are consistent with the record). *See also*, 20 C.F.R. § 404.1527(f) (Although state agency physicians are non-examining physicians, they "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

With respect to the reports contained in the record submitted by Dr. Last, the ALJ noted:

> [T]he claimant's psychiatrist who examined the claimant for the first time in approximately five years assessed the claimant with a Global Assessment of Functioning (GAF) score of 33 (Exhibit 4F). However, the reports of the mental status examination do not contain any references to any significant or debilitating findings and it appears the psychologist relied on the claimant's subjective complaints. (Exhibit 4F). Also, the subsequent progress notes indicate the mental status examinations have been generally unremarkable and the claimant [sic] activities of daily living and lack of any significant mental health treatment are inconsistent

> with an individual who experiences any debilitating symptoms. Accordingly, these opinions are not provided controlling weight.
> R. 18-19.

With respect to Dr. Saxman's evaluation, the ALJ commented "the psychologist who performed intelligence testing reported the claimant had 'marked' limitations in severe work-related activities but . . . he did not perform a mental status examination and the claimant's history of treatment and activities of daily living including her ability to successfully work as a security guard are inconsistent with his findings." R. 18.

Regarding Dr. Link's report, the ALJ remarked, "the State Agency mental health consultant who evaluated the evidence of record concluded the claimant was not precluded from performing the mental demands of competitive work on a sustained basis (Exhibit 2F). Although this opinion is provided less weight as it was provided by a non-examining physician, it is considered an expert medical opinion and entitled to some weight considering it is generally consistent with the other evidence in the record." R. 18.

The Court therefore finds that the ALJ did thoroughly and appropriately consider all the medical evidence in the record in rendering his decision. It can not be said that the decision does not find substantial evidentiary support. "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citations omitted).

Additionally, the ALJ did not find that Plaintiff's subjective statements regarding her physical and mental health were entirely credible. Dr. Link's functional capacity assessment in the PRTF stated that Plaintiff's allegations were partially credible. R. 115. The ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir. 1984). The ALJ's credibility determinations need only be supported by substantial evidence on the record. Here, the ALJ considered Plaintiff's subjective complaints and assessed them in the context of the entirety of the medical evidence, determining her statements concerning the effects of the symptoms were not entirely

credible. R. 19. Therefore, substantial evidence supports the ALJ's credibility determination.

Furthermore, the ALJ found that Plaintiffs description of daily activities was not consistent with the limitations exhibited in other case evidence. R. 17.  Plaintiff reported a variety of daily activities which included an array of domestic tasks as well as a number of social indulgences.  These were inconsistent with totally debilitating symptomatology, according to the ALJ. R. 17.

Overall, the Court finds that the ALJ's decision thoroughly evaluates the evidence of record, makes specific findings of fact and adequately explains the conclusions reached based on the evidence and the findings of fact.

Because the Court finds that the ALJ did not err in failing to find that Plaintiff's mental impairments are not disabling, the Court need not address Plaintiff's allegation of error regarding the manner in which the ALJ postured the hypothetical questions to the VE.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence.  Accordingly, the decision of the ALJ will be affirmed.  An appropriate order shall issue.

```
                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge
```

cc:   Karl E. Osterhout, Esquire
      1789 South Braddock Street
      Suite 570
      Pittsburgh, PA 15218

      Megan Farrell
      Assistant U.S. Attorney